UNITED STATES of America, for the Use and Benefit of HARRIS PAINT COMPANY, a Florida corporation, Plaintiff-Appellant,

v.

SEABOARD SURETY COMPANY, Defendant-Appellee.

No. 30344

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir. 1970, 431 F.2d 409.

Gerry R. Gordon, Tampa, Fla., for plaintiff-appellant.

Robert L. Stone, Pensacola, Fla., for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

The Harris Paint Company, as supplier of materials to a subcontractor on a Government construction project, brought this action under the Miller Act, 40 U.S.C. §§ 270a–e, against the prime contractor's surety for the unpaid price of materials supplied. The District Judge granted summary judgment for the defendant, on the ground that Harris had failed to give notice of its claim to the prime contractor within the 90-day period prescribed by 40 U.S.C. § 270b.[1] The basic facts are not in dispute. On appeal, however, Harris contends that the District Judge misapplied the law to these facts. We disagree and affirm.

On June 26, 1967, K. Chavis General Contractor, Inc. ("Chavis") entered into a contract with the Department of the Navy for construction of an aircraft maintenance hangar at the United States Naval Air Station at Pensacola, Florida. On the same date, Chavis as principal and Seaboard Surety Company as surety executed a payment bond as required by 40 U.S.C. § 270a in the sum of $669,000.

On July 24, 1967, Chavis subcontracted with W. T. Sharp for the painting of the hangar. Sharp proceeded to order paint and related materials from Harris Paint Company. Harris commenced deliveries in May of 1968, billing them to Sharp's account. These deliveries terminated on December 5, 1969, when Sharp walked off the job. Chavis then made arrangements to have someone else finish the painting, and purchased paint directly from Harris. For this paint, Harris invoiced Chavis directly, charging it to the Chavis general account, and Chavis paid in full. On May 2, 1969, some six months after the last delivery of paint to Sharp, Harris notified Chavis that $7,458.44 remained unpaid on Sharp's account. Harris now claims that by the terms of the payment bond and 40 U.S.C. § 270b, it is entitled to recover this amount from Seaboard.

As the Trial Judge correctly observed in granting summary judgment for the defendant:

[P]laintiff stands or falls on one proposition—whether the purchase and use by a contractor of materials from a supplier in the completion of a sub-contractor's job, without more, extends the time for giving the notice under the Miller Act by the supplier until 90 days after the last of such material is furnished to the contractor. And on that proposition, Plaintiff fails.

Specifically, Harris contends that the 90-day period commenced to run, not on

---

1. 40 U.S.C. § 270b provides in part:
   [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person * * * supplied the last of the material for which such claim is made * * *.

the earlier date of its last delivery to Sharp, but on the later date of its last delivery to Chavis. If we were to apply the later date, Harris's claim would not be barred by the limitation in the statute.

We adhere to the view expressed by the Ninth Circuit in Bowden v. United States for Use of Malloy, 1956, 239 F.2d 572, 577–578, cert. denied, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957):

> It cannot be doubted that one purpose of Congress in enacting the Miller Act was the protection of laborers and materialmen. But it is clear, too, * * * that it was the intent of Congress to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor. It is not consistent with either this intent or the mechanics of the statute if a prime contractor is required to choose between withholding payment to his subcontractors indefinitely or acting [at his] peril * * *.

See also United States for Use and Benefit of Miller & Bentley Equipment Co. v. Kelley, 9 Cir., 1964, 327 F.2d 590, 591, and cases cited therein.

Appellant cites T. F. Scholes, Inc. v. United States for Use and Benefit of Lock Joint Pipe Co., 10 Cir., 1961, 297 F.2d 337. In that case the Tenth Circuit, confronting a factual situation similar to this one, held for the supplier. In that case, however, the prime contractor and the subcontractor both dealt directly with the supplier from the beginning, and the supplier received no notice of the rupture between the prime contractor and the subcontractor until after the last delivery of materials to the job was complete. No such justification exists for treating the case before us as if the subcontractor never left the job. Apache Powder Company v. Ashton Company, 9 Cir., 1959, 264 F.2d 417, is similarly distinguishable. Here, Chavis

and Seaboard were entitled to warning of Harris's claim within 90 days of the last delivery to Sharp, and did not receive it. In consequence, Harris has no right of action against Seaboard on the payment bond and his suit must be dismissed. See Bush v. Maryland Casualty Company, 5 Cir., 1963, 320 F.2d 939; Coffee v. United States for Use and Benefit of Gordon, 5 Cir., 1946, 157 F.2d 968.

Affirmed.